**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

PATRICK BOWEN, as Personal
Representative of the ESTATE
OF MATTHEW PHILIP BOWEN,

        Plaintiff,

vs.                                                  Case No. 3:09-cv-526-J-32HTS

DEAN KELLY, in his official capacity as
Sheriff of Putnam County, Florida;
KENNETH PARDEN, individually;
ADAM GIESELMAN, individually;
MICHAEL PINNER, individually;
WILLIAM PRIOLETTI, individually;
JOHN BELL individually; JAMES
HIGHSMITH, individually; ANTHONY
GATELY, individually; R. LASHLEY,
individually; MARK ELAM, individually;
RICARDO ADAMS, individually; and
ROBIN RASH, individually,

        Defendants.

---

## **ORDER**[1]

This is a civil rights action brought by the representative of the estate of Matthew Philip Bowen (the "Decedent"), who committed suicide while being held as a pre-trial detainee in the Putnam County, Florida, Jail (the "Jail"). Before the Court is the Defendants'[2]

---

[1] Under the E-Government Act of 2002, this is a written opinion and therefore is available electronically. However, it is intended to decide the motion addressed herein and is not intended for official publication or to serve as precedent.

[2] Collectively, the above-named defendants are referred to as the "Defendants." R. Lashley is named as a defendant in this action, but is not named on the Dispositive Motion to Dismiss as he has not yet been served (Doc. 14 at 3). Lashley's status as a defendant

Dispositive Motion To Dismiss Amended Complaint (Doc. 14) and plaintiff's response (Doc. 15). The Court heard oral argument on January 26, 2010, the record of which is incorporated by reference. (Doc. 40).

I. **Allegations Of The Amended Complaint**

Plaintiff alleges that on May 7, 2008, the Decedent was arrested by defendant William Prioletti of the Putnam County Sheriff's Office on seven counts of possessing child pornography. (Am. Compl. ¶ 16). During his subsequent booking and screening, the Decedent "was assessed as being at no or low risk of suicide." (Id. ¶ 17). Two days later, Prioletti again arrested the Decedent – who was still in custody – on twenty additional child pornography counts, at which time the Decedent "was again assessed as being of no risk of suicide."[3] (Id. ¶ 18). Despite the conclusions of the two suicide assessments, plaintiff alleges that "[t]he Decedent had a history of suicide attempts which *would have been discovered* by proper assessment, rather than an extremely cursory questionnaire." (Id. ¶ 19)(emphasis added).

At arraignment on May 9, plaintiff alleges that another detainee threatened the Decedent's life due to the child pornography charges against him. (Id. ¶ 20). As a result, the Decedent requested placement in isolation for his own protection. Plaintiff alleges that

---

for purposes of the Dispositive Motion to Dismiss is discussed further at n. 10 and 18, *infra*.

[3]Plaintiff alleges that Prioletti, as the arresting officer, and defendants James Highsmith, Kenneth Parden, and Anthony Gately, as the booking and screening officers at the Jail at the time of Decedent's two arrests, were responsible for these suicide assessments. (Doc. 15 at 5). Defendant Parden is also alleged to have been the officer in charge of the Jail on the day of Decedent's death. (Am. Comp. ¶ 14).

defendant John Bell, a corrections officer at the Jail, conferred with defendant Mark Elam, the shift supervisor on that date, and the two agreed to place the Decedent in a solitary cell in the isolation block. (Id. ¶ 21).

On May 10, 2008, the Decedent attended the noon feeding. Plaintiff alleges that "[a]t that time, the Decedent requested to speak with Defendant [Michael] Pinner[4]; the request was ignored."[5] (Id. ¶ 22). Upon returning to his cell, the Decedent allegedly "covered the inside of his cell bars with a bed sheet... [t]his action was also ignored."[6] (Id. ¶ 23). Shortly thereafter, plaintiff alleges that "the Decedent waved his arm through the bars holding a paper" which "appeared to be an inmate request form." (Id. ¶¶ 24-25). Decedent "repeatedly waved his arm through the bars... from 1:18 p.m. to 1:22 p.m.," and in total, plaintiff alleges that "[t]he video reveals that the Decedent attempted to summon an officer for almost forty-five minutes." (Id. ¶¶ 25-26). At 1:48 p.m., the Decedent ripped his bedsheet, which he fashioned into a noose and tied to the cell door at 2:09 p.m. (Id. ¶¶ 27-28). He then placed his head in the noose and hung himself at 2:10 p.m. (Id. ¶ 29).

The remainder of plaintiff's allegations pertain to the time period between the Decedent's suicide and the discovery of its occurrence by Jail officials. Plaintiff alleges that

---

[4] Defendant Pinner is a corrections officer at the Jail who plaintiff alleges was working in Decedent's cell block on the date of his death. (Id. ¶ 11). Defendants Gieselman, Adams, Rash, Bell, Parden (by virtue of his status as officer in charge of the Jail) and Elam (as shift supervisor) are also corrections officers alleged by plaintiff to have been responsible for the supervision of the Decedent at the Jail on the day of his death. (Id. ¶¶ 12-14).

[5] The plaintiff does not allege the specifics of the Decedent's request, nor who ignored the request.

[6] The plaintiff does not allege who ignored this action.

3

defendant Robin Rash "entered the [isolation] cell block twice that afternoon to dispense medication," (Id. ¶ 30), though it is not alleged that Rash saw the Decedent either time. In addition, the plaintiff alleges that "[a]t 3:17 p.m., the inmate in the adjoining cell was taken to the medical facility by Defendant Pinner, returning at 3:57 p.m."[7] (Id. ¶ 31). At 3:58 p.m., Bell performed an inmate count during which plaintiff alleges that Bell "walked to the Decedent's cell, looked in, walked away, returned, looked in the cell, observed the Decedent 'standing upright' and walked away."[8] (Id. ¶ 33). The suicide was not discovered until a trusty approached the Decedent's cell to dispense juice at 4:50 p.m. (Id. ¶ 35). "The trusty alerted Defendant [Ricardo] Adams who then arrived at the Decedent's cell and saw the noose." (Id. ¶ 36). Adams then "called for assistance and attempted to lift the Decedent. Assistance arrived, the noose was cut, the cell door opened and CPR begun at 4:53 p.m." (Id. ¶ 37). The Decedent was subsequently pronounced dead in the emergency room of the Putnam Community Medical Center. (Id. ¶ 39).

The plaintiff alleges that the Decedent was not properly supervised in his cell from the time he returned from the noontime meal to the time his body was discovered by the trusty. Specifically, plaintiff contends that:

> [t]he Sheriff's procedures mandate that deputies conduct security checks of the isolation cells every fifteen to thirty minutes. Checks are to include visual inspection of locks, cell and bunk areas, corridors and inmate activity. Visual checks via the surveillance system are to be substituted for in-person checks

---

[7]Plaintiff alleges that Decedent "was observed upright at the left front corner of the cell during that time," though which defendant observed him is not specified. (Id. ¶ 32).

[8]Plaintiff alleges that Decedent was again observed in this upright position at 4:31 p.m., though plaintiff again does not specify who observed him. (Id. ¶ 34).

4

only in case of emergency which creates the inability to enter the cell block. Defendant Gieselman performed only visual checks via the surveillance system which does not offer a full view of the cell. Defendant Gieselman failed to do the requisite in person check of the Decedent's cell "for no reason."

(Id. ¶ 42). In addition, plaintiff asserts that "[a]lthough Defendant Gieselman was observing the cell block through closed circuit cameras, he did not respond to Decedent's cell at any time." (Doc. 15 at 3).

The Amended Complaint alleges four counts, the first three of which are brought pursuant to 42 U.S.C. § 1983. In Count I, plaintiff contends that defendant Dean Kelly,[9] the Sheriff of Putnam County, was responsible for "policies and procedures at the jail" which gives rise to a "duty to properly train personnel to assess inmates for risk of suicide." (Am. Comp. ¶¶ 48, 50). Specifically, plaintiff alleges that through his personnel, Sheriff Kelly "breached his duty to properly classify Mr. Bowen as a suicide risk and to prevent him from harming himself, thereby violating Mr. Bowen's right to have his psychological needs met." (Id. ¶ 51). As a result, plaintiff contends that Sheriff Kelly's "policies concerning the assessment and supervision of inmates directly contributed to the Decedent's death" and therefore violated the Decedent's "clearly established right to medical care for his suicidal condition" under the Fourteenth Amendment. (Id. ¶¶ 52-53)(citation omitted).

In Count II, plaintiff alleges that defendants Prioletti, Lashley,[10] Highsmith, Parden,

---

[9]Sheriff Kelly is named as a defendant in both Count I and Count IV. In Count IV, plaintiff raises a negligence claim against Sheriff Kelly pursuant to § 768.28, Florida Statutes. (Doc. 10 at 4). The negligence claim, which is brought in the alternative to the constitutional claim against Sheriff Kelly, is addressed in Section III(B), *infra*.

[10]Defendant Lashley is identified in the Amended Complaint as defendant Prioletti's supervisor, (Id. ¶ 10), which appears to explain why he is named in Count II. No other

5

and Gately (the "Count II Defendants") "were aware of the shameful charges against Mr. Bowen and the agitated state he was in, especially after his life was threatened," but that each "demonstrated deliberate indifference to the Decedent's mental state and therefore, to his medical needs by their failure to properly assess the Decedent's psychological needs." (Id. ¶¶ 59-60). Specifically, plaintiff contends that the Count II Defendants "failed to properly assess and classify the Decedent as a risk for suicide," and such failure violated the Decedent's constitutional rights. (Doc. 15 at 5).

In Count III, plaintiff alleges that defendants Gieselman, Pinner, Adams, Rash, Bell, Elam and Parden (the "Count III Defendants," and collectively with the Count II Defendants, the "Officer Defendants") violated the Decedent's "clearly established right to be secure while incarcerated... by failing to properly supervise the Decedent to ensure his safety while in their custody." (Am. Comp. ¶¶ 62-63). Specifically, plaintiff alleges that the Count III Defendants "were deliberately indifferent to the Decedent's welfare by [(i)] failing to properly supervise the Decedent to ensure his safety while in their custody[,]... [(ii)] fail[ing] to monitor his cell and his actions[,]... [and (iii)] failing to act when the Decedent covered his bars with a bedsheet." (Id. ¶¶ 64-66). Plaintiff also alleges that the Count III Defendants violated Decedent's "clearly established right to care for his psychological needs" because they "were deliberately indifferent to the Decedent's mental state, and therefore to his medical needs

---

specific facts are alleged as to his involvement with Decedent. In their Dispositive Motion to Dismiss, Defendants note that "[i]t appears [Lashley] may be named as a Defendant in this case solely upon his review of the report prepared by [Prioletti]." (Doc. 14 at 7). Plaintiff's response in opposition does not mention Lashley at all, and at oral argument, Plaintiff's counsel indicated that Plaintiff had no intention of attempting to serve Lashley.

by ignoring his requests for aid." (Id. ¶¶ 62-63). In sum, plaintiff contends that the Count III Defendants "were charged with inmate supervision and failed to perform their duties." (Doc. 15 at 5).

**II.     Legal Standard**

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences therefrom in favor of the plaintiff, construing the allegations in the light most favorable to the plaintiff. Castro v. Sec'y of Homeland Sec., 472 F.3d 1334, 1336 (11th Cir. 2006); Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Erickson v. Pardus, 551 U.S. 89, 93, 127 S.Ct. 2197, 2200 (2007). Normally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Id. (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

However, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555 (internal citations and quotations omitted). As a result, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face" in order to "nudge[ ] [the] claims across the line from conceivable to plausible." Id. at 570. In defining facial plausibility in the context of civil rights pleadings, the Supreme Court recently stated:

> A claim has facial plausibility when the plaintiff pleads factual content that allows

> the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Ashcroft, et al. v. Iqbad, 566 U.S. __, 129 S.Ct. 1937, 1949 (2009)(quoting Twombly, 550 U.S. at 557).

In addition, the Defendants (in an abundance of caution) raise the defense of qualified immunity in their Dispositive Motion to Dismiss. The Eleventh Circuit "has tightened the application of [FRCP 8(a)(2)] in section 1983 cases where qualified immunity is at issue." Harper v. Lawrence County, Ala., ___ F.3d ____, 2010 WL 21179 at *3 (11th Cir. 2009). In such cases, the Eleventh Circuit applies a "heightened pleading requirement" under which "the relevant facts must be alleged with some specificity." Danley v. Allen, 540 F.3d 1298, 1314 (11th Cir. 2008).

> The purpose of the heightened pleading standard is for the plaintiff to provide facts with "sufficient detail for Defendants to understand what alleged rights were violated. . . and which of their actions allegedly violated those rights," as well as "for the court to determine whether those facts indeed set out a violation of rights and whether those rights were clearly established when these incidents occurred."

Harper, 2010 WL 21179 at *3 (quoting Amnesty Int'l, USA v. Battle, 559 F.3d 1170, 1180 (11th Cir. 2009)).

### III. Discussion

#### A. Constitutional Due Process Claims Under § 1983

The Eleventh Circuit follows a two-step analysis to determine if qualified immunity applies to any § 1983 claim. Id. at *4. "The first step is to determine 'whether the [defendant's] conduct amounted to a constitutional violation,' and the second step is to

8

'analyze[ ] whether the right violated was 'clearly established' at the time of the violation.'" Id. (quoting Lewis v. City of West Palm Beach, Fla., 561 F.3d 1288, 1291 (11th Cir. 2009)).

"A § 1983 claim is predicated on an alleged violation of an underlying constitutional right." Cook ex. rel Estate of Tessier v. Sheriff of Monroe County, 402 F.3d 1092, 1115 (11th Cir. 2005). Pretrial detainees like the Decedent "plainly have a Fourteenth Amendment[11] due process right 'to receive medical treatment for illness and injuries, which encompasses a right to psychiatric and mental health care, and a right to be protected from self-inflicted injuries, including suicide.'" Id. (quoting Hamm v. DeKalb County, 774 F.2d 1567, 1574 (11th Cir. 1985)). "[I]n a prisoner suicide case, to prevail under section 1983 for violation of substantive rights, under ... the ... fourteenth amendment, the plaintiff must show that the jail official displayed 'deliberate indifference' to the prisoner's taking of his own life." Cagle v. Sutherland, 334 F.3d 980, 986 (11th Cir. 2003)(quoting Edwards v. Gilbert, 867 F.2d 1271, 1274-75 (11th Cir.1989)). Given this framework, the Court addresses the validity of plaintiff's § 1983 claims against the Officer Defendants and the Sheriff in turn.

### 1. Individual Capacity Deliberate Indifference (Officer Defendants)

In Counts II and III of the Amended Complaint, plaintiff contends that each of the

---

[11] Government officials' alleged deliberate indifference to the serious medical needs of pretrial detainees is governed by the Fourteenth Amendment due process clause. The applicable analysis is the same as that applied under the Eighth Amendment cruel and unusual punishment clause applicable to post-conviction prison inmates. Danley v. Allen, 540 F.3d 1298, 1306, 1310 (11th Cir. 2008); Lancaster v. Monroe County, Ala., 116 F.3d 1419, 1425 n.6 (11th Cir. 1997); see also Burnette v. Taylor, 533 F.3d 1325, 1330 n.4 (11th Cir. 2008)("'the minimum standard for providing medical care to a pre-trial detainee under the Fourteenth Amendment is the same as the minimum standard required by the Eighth Amendment for a convicted prisoner'").

9

Officer Defendants, in their individual capacities,[12] violated the Decedent's constitutional rights by their deliberate indifference to his suicidal condition. To state a deliberate indifference claim[13] against any of the Officer Defendants, "the plaintiff has to show that the defendant had '(1) subjective knowledge of a risk of serious harm; [and] (2) disregard[ed] ... that risk; (3) by conduct that is more than mere negligence.'" Cagle, 334 F.3d at 987 (quoting McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir.1999)). "Under [the Eleventh] Circuit's precedent, in a prison suicide case, deliberate indifference requires that the defendant deliberately disregard 'a *strong likelihood* rather than a mere possibility that the self-infliction of harm will occur.'" Cook, 402 F.3d at 1115 (quoting Cagle, 334 F.3d at 986)(emphasis in original). "[T]he mere opportunity for suicide, without more, is clearly insufficient to impose liability on those charged with the care of prisoners." Cagle, 334 F.3d at 986 (quoting Tittle v. Jefferson County Comm'n, 10 F.3d 1535, 1540 (11th Cir. 1994)(en banc)).

Plaintiff first contends that the Count II Defendants' failure to properly assess the

---

[12] The Amended Complaint states that each of the Officer Defendants "are sued in their official and individual capacities." (Am. Comp. ¶¶ 10-13). However, plaintiff retracted this position in response to Defendants' Dispositive Motion to Dismiss, stating that "[t]he Amended Complaint was meant to allege that the Defendants were acting under color of state law while performing their official duties. The Defendants are correct in that, except for the Sheriff, the officers are not subject to suit in their official capacities. Therefore, suit is brought against the Sheriff in his official capacity pursuant to § 1983 and § 768.28, Fla. Stat. The remaining Defendants are sued pursuant to § 1983 only in their individual capacities." (Doc. 15 at 4 n.1).

[13] Despite the alleged supervisory capacity of some of the Officer Defendants (namely, Elam, Lashley, and Parden), it appears that the deliberate indifference claims against each Officer Defendant are based on "personal participation" rather than a theory of "supervisory liability." (Doc. 15 at 5). The following discussion therefore analyzes the Eleventh Circuit standard for "personal participation" deliberate indifference. See Harper, 2010 WL 21179 at *3-*5.

Decedent as a suicide risk rises to the level of deliberate indifference. Plaintiff concedes that none of the Count II Defendants was aware of Defendant's history of suicide attempts,[14] but contends that they failed in their duty to discover these attempts because the "assessment was so cursory as to be no assessment at all." (Doc. 15 at 11). However, "[s]ome form of knowledge of the danger is required to support a section 1983 claim" in the prisoner-suicide context. Popham v. City of Talladega, 908 F.2d 1561, 1564 (11th Cir. 1990). "'Absent knowledge of a detainee's suicidal tendencies, [our] cases have consistently held that failure to prevent suicide has never been held to be deliberate indifference.'" Cook, 402 F.3d at 1116 (quoting Popham, 908 F.2d at 1564)(alteration in original). As a result, the failure of the Count II Defendants to assess Decedent as a suicide risk when there was no indication that he had a history of suicidal tendencies cannot serve as the basis for a finding of deliberate indifference. Plaintiff's allegations do not allow the Court to draw the "reasonable inference that the [Count II Defendants are] liable for the misconduct alleged." Iqbad, 129 S.Ct. at 1949.

Plaintiff next contends that because defendants Elam and Bell "were aware of the shameful charges against [Decedent] and the agitated state he was in, especially after his life was threatened" (Am. Comp. ¶ 58), they acted with deliberate indifference to his suicidal condition by placing him in the isolation block. Rephrased slightly, plaintiff's argument is that the failure of Elam and Bell to infer Decedent's suicidal condition from the charges against

---

[14] In fact, plaintiff concedes that none of the Defendants had any prior knowledge of the Decedent's alleged suicidal tendencies.

him[15] and his "agitated state" makes them liable for Decedent's death.  Without knowledge of a pretrial detainee's suicidal tendencies, however, such prescience on the part of jail officials is not required.  In fact, the Eleventh Circuit has stated that "[t]o be deliberately indifferent to a strong likelihood that the prisoner will commit suicide, the official must be subjectively aware that the *combination* of the prisoner's suicidal tendencies and the feasibility of suicide in the context of the prisoner's surroundings creates a strong likelihood that the prisoner will commit suicide."  Gish v. Thomas, 516 F.3d 952, 954-55 (11th Cir. 2008)(finding no deliberate indifference where officer transporting detainee, knowing that detainee was a strong suicide risk, left a loaded firearm in the front seat of police car while detainee was handcuffed in the back seat behind a protective screen officer erroneously believed to be locked)(emphasis in original).  As a result, even if placing an agitated prisoner in isolation arguably increases "the feasibility of suicide," (i) Elam and Bell must still have had some knowledge of Decedent's suicidal condition, and (ii) the act of placing him in isolation must have been made with the knowledge that doing so would exacerbate that known risk of suicide.  Plaintiff fails to allege any such facts, and therefore the contention that placing the Decedent in isolation constitutes deliberate indifference "does not raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555.

Plaintiff next contends that the Count III Defendants' failure to properly supervise,

---

[15]If the Court were to accept plaintiff's argument that the child pornography charges against Decedent were sufficient to create *per se* "subjective knowledge of a risk of serious harm," prison officials would effectively be liable under § 1983 every time a pretrial detainee facing "shameful" charges committed suicide while in custody, regardless of whether the detainee exhibited any previous suicidal tendencies.  This simply cannot be the case.

12

monitor, and attend to the Decedent constitutes deliberate indifference. Plaintiff concedes that whether the Count III Defendants are liable for deliberate indifference on these grounds turns on their subjective knowledge of the risk that Decedent was suicidal at the time they allegedly failed to properly monitor him. Plaintiff also concedes that the time period *prior* to Decedent's death is the only relevant period in this inquiry, as there is no allegation that any of the Defendants witnessed and ignored either the suicide itself or its immediate aftermath.[16]

The Amended Complaint does not allege that any of the Count III Defendants had actual knowledge of Decedent's suicidal condition. Despite this, Plaintiff argues that subjective knowledge of Decedent's suicidal tendencies can be inferred from circumstantial evidence, citing Farmer v. Brennan, 511 U.S. 825, 842 (1994)("Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, *including inference from circumstantial evidence*, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.")(emphasis added). Plaintiff contends that the following allegations should have raised a "red flag" that the risk of Decedent's suicide was "obvious": (i) Decedent requested protective custody; (ii) Decedent requested to speak with defendant Pinner; (iii) Decedent covered his cell bars with a bed sheet; (iv) Decedent "exhibited signs of extreme agitation for several hours prior to his suicide," and (v) Defendant attempted to gain attention for an

---

[16]In addition, Plaintiff does not contend that any of the Defendants acted with deliberate indifference to Decedent's serious medical condition by failing to respond more quickly to his suicidal act. It appears that the Decedent died almost immediately after hanging himself; thus, the unfortunate failure of Jail officials to discover his body for several hours does not give rise to a § 1983 claim. *Cf.* Wallace v. Jackson, — F.Supp. 2d ----, 2009 WL 3134566 at * 5 (M.D. Ala. Sept. 28, 2009).

13

hour before his suicide. (Doc. 15 at 7). Plaintiff concedes that no additional facts are likely to arise after discovery, and asks that the Court determine whether the circumstantial evidence alleged in the Amended Complaint can support a claim for deliberate indifference against the Count III Defendants.

"Imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. Each individual Defendant must be judged separately and on the basis of what that person knows." Burnette v. Taylor, 533 F.3d 1325, 1331 (11th Cir. 2008). However, such is an impossibility in this case, as Plaintiff has failed to allege which of the above facts were known by which of the Count III Defendants.[17] Nevertheless, the Court will assume arguendo that each (or any) of the Count III Defendants was aware of the totality of the circumstantial evidence alleged in the Amended Complaint.

Under the law of the Eleventh Circuit, the totality of the facts alleged, giving all inferences to the Plaintiff, does not reasonably give rise to subjective knowledge that the Decedent was suicidal. Even if these facts could be construed so as to demonstrate a "strong likelihood" of the risk of harm to Decedent, Plaintiff is not able to allege that any of the Count III Defendants actually inferred such a risk. "With respect to the 'subjective knowledge' component [of deliberate indifference], [the Eleventh Circuit] has stated that defendants 'must both be *aware of facts* from which the inference could be drawn that a substantial risk of serious harm exists, *and [ ] must also draw the inference.*'" Harper, 2010

---

[17]In fact, plaintiff has not alleged that any of the Count III Defendants knew *anything* about Decedent's activity within his cell or about his mental condition in the hours prior to suicide; rather, plaintiff contends that they acted with deliberate indifference by *failing* to notice such things.

14

WL 21179 at *4 (quoting Bozeman v. Orum, 422 F.3d 1265, 1272 (11th Cir. 2005))(emphasis added). Thus, without knowledge that the Decedent had any suicidal tendencies, the Count III Defendants' failure to prevent his suicide cannot constitute deliberate indifference. Cook, 402 F.3d at 1116. Plaintiff's claims against the Count III Defendants[18] therefore "stop[ ] short of the line between possibility and plausibility of 'entitlement to relief.'"[19] Iqbad, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 557).

### 2. Official Capacity Deliberate Indifference (Sheriff Kelly)

Where, as here, the county sheriff is sued in his official capacity, the § 1983 claim "is effectively an action against the governmental entity he represents;" in this case, Putnam County. Cook, 402 F.3d at 1116. A municipality can be found liable under § 1983 "only when a 'policy or custom' of the municipality inflicts the injury." Id. (quoting City of Canton v. Harris, 489 U.S. 378, 385 (1989)). Therefore, "[a] failure to adequately train municipal employees constitutes an actionable policy or custom for § 1983 purposes 'only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [employees] come into contact.'" Id. (quoting Harris, 489 U.S. at 388). Plaintiff contends that Sheriff Kelly's failure to properly train Putnam County personnel to assess inmates for risk

---

[18]As mentioned in n.2, *supra*, defendant Lashley is not named on the Defendants' Dispositive Motion to Dismiss. However, Lashley is dismissed as a defendant pursuant to Fed. R. Civ. P. 4(m) due to plaintiff's failure to effect service upon him within 120 days after filing of the complaint. Plaintiff has not shown good cause for the failure to serve, and would be incapable of showing such cause as the complaint is inadequate to support a claim against Lashley.

[19]Because the Court finds no constitutional violation, it is not necessary to address the second step of the qualified immunity analysis as to any of the Officer Defendants.

15

of suicide constitutes deliberate indifference as to Decedent because it was a foreseeable cause of his death. However, without an underlying violation of Decedent's constitutional rights on the part of the Officer Defendants, there can be no § 1983 liability on the part of Sheriff Kelly for failure to train, nor can Putnam County be liable on the ground that its policy caused a constitutional violation. Gish, 516 F.3d at 955. Whether the failure of the Officer Defendants to classify the Decedent as a suicide risk or properly supervise him on May 8-10, 2008 constitutes negligence on Sheriff Kelly's part is an entirely different question which is addressed below.

**B.     Negligence Pursuant to § 768.28, Fla. Stat. (Sheriff Kelly)**

Count IV of the Amended Complaint, brought pursuant to § 768.28, Fla. Stat., alleges that Sheriff Kelly breached a duty to use reasonable care for the Decedent's safety and well-being while he was a pretrial detainee at the Jail. Because plaintiff's constitutional claims are due to be dismissed, the Court declines to exercise supplemental jurisdiction over this state law claim pursuant to 28 U.S.C. § 1367(a). Where, as here, a state law claim was originally filed in state court and has been removed to federal court pursuant to 28 U.S.C. § 1441, remand to state court, rather than dismissal of the state law claim, is the proper approach. Lewis v. City of St. Petersburg, 260 F.3d 1260, 1267 (11th Cir. 2001). Accordingly, it is hereby

**ORDERED**:

1.     Defendants' Dispositive Motion To Dismiss Amended Complaint (Doc. 14) is **GRANTED** as to Counts I, II, and III, which counts are **DISMISSED WITH PREJUDICE**. Count IV is remanded to the Circuit Court of the Seventh Judicial Circuit, in and for Putnam

County, Florida.

    2.    The clerk shall terminate all pending motions and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 1st day of February, 2010.

                                                TIMOTHY J. CORRIGAN
                                                United States District Judge

jmm.
Copies to:
Counsel of Record